# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STEVEN C. FUSTOLO,**                          Involuntary Chapter 7
    Debtor                              Case No. 13-12692-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are Cross-Motions for Summary Judgment with respect to an "Answer to Involuntary Petition" filed by the alleged debtor, Steven C. Fustolo (the "Alleged Debtor" or "Fustolo"), pursuant to which he seeks dismissal of the Involuntary Petition filed by three creditors:  50 Thomas Patton Drive, LLC ("Patton Drive"); the Patriot Group, LLC ("Patriot"); and Richard Mayer ("Mayer") (collectively, the "Petitioning Creditors").  Specifically, in his Answer, the Alleged Debtor challenged the claim of Patton Drive and his alleged liability to it, disputing the claim in its entirety.  In addition, he asserted that he had more than 12 creditors and that the Involuntary Petition failed to meet the requirement of 11 U.S.C. § 303(b), namely that each of the petitioning creditors holds a claim that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount."

The issues presented include whether this Court should adopt the majority view that an unstayed, non-default state judgment on appeal is not subject to bona fide dispute

1

for purposes of § 303(b)(1), *see* In re Drexler, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986), or the

minority view, which requires the petitioning creditors to make a prima facie case but

affords the alleged debtor the opportunity to demonstrate the existence of a bona fide

dispute as to liability or amount. *See* Platinum Fin. Servs. Corp. v. Byrd (In re Byrd), 357

F.3d 433, 438 (4th Cir. 2004).

　　This is a core matter over which this Court has jurisdiction. *See* 28 U.S.C. §§ 1334(b),

157(b)(1), and (b)(2)(A).

## II. BACKGROUND

　　On May 6, 2013, the Petitioning Creditors filed an Involuntary Petition against the

Alleged Debtor seeking the entry of an order for relief under Chapter 7. Each Petitioning

Creditor is a judgment creditor of the Alleged Debtor. The Petitioning Creditors have

alleged that (1) they are eligible to file the petition pursuant to 11 U.S.C. § 303(b); (2) the

Alleged Debtor is a person against whom an order for relief may be entered; and (3) the

Alleged Debtor is generally not paying his debts as they become due.

　　On May 7, 2013, the Petitioning Creditors caused a summons and a copy of the

petition to be served upon the Alleged Debtor by first class mail, postage prepaid at his

home address. The Alleged Debtor filed his Answer to the petition, which he

supplemented with leave of the Court on July 22, 2013. The Alleged Debtor did not

challenge the eligibility of Patriot to file the petition pursuant to § 303(b) and did not

dispute the amount of his indebtedness to Patriot, namely $20,423,216.44. Moreover, the

Alleged Debtor did not contest his indebtedness to Mayer in the amount of $150,000.00,

although he alleged that Mayer is a fully secured creditor.

With respect to Patton Drive, the Alleged Debtor contested his liability with respect to a judgment obtained by Patton Drive (the "Patton Drive Judgment") based upon "fundamental errors committed by the Superior Court in calculating the damages assessed against Fustolo and the other defendants," and the stay of the judgment pursuant to Mass. R. Civ. P. 62(d). The Alleged Debtor also alleged that Patton Drive is a fully secured creditor. The Alleged Debtor, however, did not deny that he is a person against whom an order for relief may be entered. In addition, he did not deny that he is generally not paying his debts as they become due.

The Court scheduled a hearing on Fustolo's request to dismiss the Involuntary Petition set forth in his Answer to the Involuntary Petition. Prior to the hearing, on July 19, 2013, the Petitioning Creditors filed a "Request for Judicial Notice," asking the Court to take judicial notice of various facts and statements set forth in certain documents prepared and adopted by Fustolo and filed in the Suffolk Superior Court, Department of the Massachusetts Trial Court, in a pending civil action, captioned 50 Thomas Patton Drive LLC v. Steven C. Fustolo, et al., Civil Action No. 09-3567-BLS2, together with the affidavit of Cliff Schorer ("Schorer"), the manager and sole owner of Patton Drive. In addition, prior to the hearing, the Alleged Debtor, as noted above, filed a Motion to Supplement Answer to Involuntary Petition, as well as Schedules D and F, and a Summary of

3

Schedules, and an affidavit.[1]  In his Motion to Supplement Answer, the Alleged Debtor

stated that "any debt that could be owed to 50 Thomas Patton Drive, LLC is secured by

equity of over $4.0 million in real property" and that "the debt owed to Mayer is secured

by equity of at least $230,000 in real property located at 110 Church Street, Winchester,

MA." As noted above, the Alleged Debtor did not challenge the final judgment obtained

by Patriot, or dispute any of the $20,423,216.44 in indebtedness alleged in the Petition.

The Court conducted a hearing, as scheduled, on July 23, 2013.  At the conclusion

of the hearing, the Court directed the Petitioning Creditors to file a motion for summary

judgment.  In accordance with the Court's order, the Petitioning Creditors filed a Motion

for Summary Judgment on August 15, 2013, together with the affidavits of Schorer, Mayer,

John C. Howe ("Howe"), the Chief Executive Officer of Patriot, and Jonathan M. Horne,

Esq., counsel to the Petitioning Creditors,  and numerous exhibits.  In addition, they filed

a "Petitioning Creditors' Statement of Undisputed Facts and Memorandum of Law in

Support of Motion for Summary Judgment."

The Alleged Debtor filed an "Opposition of Steven C. Fustolo to Petitioning

Creditors' Motion for Summary Judgment and a Cross-Motion for Summary Judgment and

Assessment of Fees and Damages pursuant to 11 U.S.C. § 303(i)." He also filed a Response

to the Petitioning Creditors' Statement of Material Undisputed Facts and Statement of

Additional Material Undisputed Facts, together with the affidavits of his bankruptcy

---

[1] The Debtor amended Schedules D and F on August 15, 2013.  He listed total
liabilities of $15,473,000.00 on Amended Schedule D and total liabilities of $24,314077.00
on Amended Schedule F.

counsel, David M. Nickless, Esq., his state court trial counsel, Bruce W. Edmands, Esq., and

numerous exhibits.  The Alleged Debtor also filed an affidavit to which numerous exhibits

are attached. The Petitioning Creditors then filed a Reply with additional affidavits and

exhibits.

As will be discussed more fully below, the Court finds that there are no material

facts in dispute and the cross-motions are ripe for summary judgment.  *See* Fed. R. Civ. P.

56(a), made applicable to this proceeding by Fed. R. Bankr. P. 7056.  Based upon the

Involuntary Petition, the Answer to the Involuntary Petition, as supplemented, as well as

the affidavits and exhibits, including the 28-page Memorandum of Findings and Rulings

and Judgment issued by the Suffolk Superior Court, the Court makes its findings of fact

and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## III. FACTS[2]

### A. The Patriot Judgment

Patriot is a judgment creditor of the Alleged Debtor pursuant to a judgment entered

in favor of Patriot by the Middlesex Superior Court, Department of the Massachusetts Trial

Court on May 26, 2011 in a civil action  captioned The Patriot Group, LLC v. Steven C.

Fustolo, et al., Civil Action No. 2010-00529 (the "Patriot Judgment").  The Middlesex

Superior Court entered judgment against the Alleged Debtor "in the amount of

$20,423,216.44, plus interest on the principal sum of $13,600,000 at the contract rate of

---

[2] Where appropriate, the Court has paraphrased the facts set forth in the parties'
Statements of Undisputed Facts.

nineteen percent (19%) from April 25, 2011, pursuant to Count I of the Verified Complaint."[3]   According to Howe, Patriot does not hold security for all of the Patriot Judgment, stating "all of the Patriot Final Judgment is unsecured."

The Alleged Debtor never filed an appeal with respect to any part of the judgment entered by the Middlesex Superior Court in favor of Patriot, and the time within which the Alleged Debtor could have filed a notice of appeal has expired.  He has not paid the Patriot Judgment or any portion of it, although he asserts that "upon information and belief Patriot foreclosed upon its collateral.  He has neither challenged his liability for the Patriot Judgment nor disputed any of the $20,423,216.44 amount of his indebtedness.

B. The Mayer Judgment

On February 19, 2009, Mayer initiated a civil action in the Middlesex Superior Court, Department of the Massachusetts Trial Court, captioned Richard Mayer v. Steven C. Fustolo, et al., Civil Action No. MICV 2009-00674. On February 8, 2011, the Middlesex Superior Court entered an Agreement for Judgment in Mayer's favor and against the Alleged Debtor pursuant to which the Middlesex Superior Court adjudicated, and the Alleged Debtor expressly stated and agreed, that he is indebted

to Mayer in the amount of $150,000.00, plus interest at a rate of eighteen percent (18%) per annum accruing from September 13, 2008 to the present (the "Mayer Judgment").  In the

---

[3] The Superior Court added:  "In the event Patriot collects any sums on its judgment against Affinity Investments, LLC ("Affinity"), said sums shall be credited to Fustolo as if paid by him, and if this judgment against Fustolo is satisfied in full, Patriot shall assign its judgment against Affinity (and any execution issued thereon) to Fustolo."

Mayer Judgment the Alleged Debtor expressly stated and agreed to waive any and all rights to appeal the Mayer Judgment, all defenses and counterclaims, whether alleged in the litigation or not, and any right to a stay of execution.  The Alleged Debtor has not paid the Mayer Judgment or any portion of it.  Additionally, he has neither challenged the Mayer Judgment nor disputed any of the $150,000 amount of his indebtedness.

C. <u>The Patton Drive Litigation and Judgment</u>

1. The Randolph Property Loan

On July 17, 2008 the Alleged Debtor owned and controlled 50 TPD Realty, LLC ("TPD").  On July 17, 2008, Patton Drive sold certain real property located at 50 Thomas Patton Drive, Randolph, Massachusetts (the "Randolph Property") to TPD. As consideration for the sale by Patton Drive of the Randolph Property to TPD, the Alleged Debtor executed and delivered to Patton Drive two interest bearing promissory notes on behalf of TPD as the maker, and in favor of Patton Drive as the holder, one in the amount of $900,000 and the other in the amount of $350,000 (the "Randolph Notes"). According to the Alleged Debtor, TPD executed the two promissory notes in favor of Patton Drive "only in partial consideration of the purchase price."

The Alleged Debtor executed and delivered to Patton Drive his personal guaranty of the Randolph Notes (the "Fustolo Guaranty").  The Randolph Notes are in default. The loans memorialized by the Randolph Notes have never been repaid in full, and the Fustolo Guaranty is in default.

2. The Revere Beach Holdings, LLC Loans

On and after September 18, 2008, the Alleged Debtor owned and controlled Revere Beach Holdings, LLC ("RBH"). On and after September 18, 2008, the Alleged Debtor was attempting to obtain construction financing for a condominium project in Revere, Massachusetts (the "Revere Beach Project") which was being developed by RBH. On September 18, 2008, the Alleged Debtor executed and delivered to Patton Drive two interest bearing promissory notes on behalf of RBH as the maker, and in favor of Patton Drive as the holder, one in the amount of $1.1 million and the other in the amount of $400,000 (the "RBH Notes").

The RBH Notes were issued in consideration of an aggregate $1.5 million loan made by Patton Drive to RBH (the "RBH Loan") for the purpose of assisting the Alleged Debtor and RBH in securing construction financing for the Revere Beach Project.

According to Patton Drive, it made the RBH Loan on the condition that the proceeds would remain in a blocked account in the United States held by RBH's counsel pending closing of construction financing for the Revere Beach Project that the Alleged Debtor represented to Patton Drive would occur within days. The Alleged Debtor, in response, asserts that that fact is not material as he is not personally liable to Patton Drive for any outstanding debt due or arising out of the RBH Notes.

The Alleged Debtor represented to Patton Drive that the RBH Loan would be repaid from the proceeds of a construction financing for the Revere Beach Project. RBH, however, never paid any amounts due and owing under the RBH Notes.

3. The Patton Drive Litigation

8

On August 21, 2009, Patton Drive initiated a civil action against the Alleged Debtor and his various affiliates in the Suffolk Superior Court, captioned <u>50 Thomas Patton Drive LLC v. Steven C. Fustolo, et al.</u>, Civil Action No. 09-3567-BLS2 (the "Patton Drive Action"). In its Verified Complaint against the Alleged Debtor, as well as TPD, RBH, Huntington Properties, Inc., and 5 High Street, LLC, Patton Drive asserted contract claims with respect to the Randolph Notes, the Fustolo Guaranty, and the RBH Notes, and claims based on fraud, conversion, and unfair and deceptive business practices. Specifically, Patton Drive asserted eleven claims for relief as follows:

Count One against all defendants for Fraud;

Counts Two and Three against 50 TPD Realty, LLC for Breach of Contract on two Promissory Notes dated July 17, 2008 and executed by TPD in the original amount of $350,000 and $900,000;

Count Four against Fustolo for breach of contract on his guaranty of the two TPD Notes;

Count Five against 5 High Street, LLC and Huntington Properties, Inc. for breach of contract on their guaranty of the two TPD Notes;

Count Six and Seven against RBH for breach of Contract on two Promissory Notes dated September 18, 2009 and executed by RBH in the original amount of $1,100,000 and $400,000;

Count Eight against all defendants for violation of Mass. Gen. Laws ch. 93A;

Count Nine against Fustolo and RBH for Conversion; and

Counts Ten and Eleven for Reach and Apply and Piercing the Corporate Veil against all defendants.

In the Patton Drive Litigation, the Defendants asserted, among other the defenses, that Patton Drive charged usurious interest rates of 35% to as much as 130% on the

Randolph Notes, but failed to provide advance notice to the Massachusetts Attorney General based on its intent to charge usurious rates as required by law. The Randolph Notes were executed on July 17, 2008. On September 12, 2008, Patton Drive forwarded a usury notification to the Massachusetts Office of the Attorney General. The Randolph Notes were amended on September 18, 2008 at the time the RBH Notes were executed. The Criminal Bureau of the Office of the Attorney General received the usury notification on September 24, 2008.

On September 28, 2011, the state court, Roach, J., issued a 33-page Memorandum of Findings and Rulings. At the conclusion of its Memorandum, the court directed the parties to submit, within 14 days, proposed forms of final judgment. The Alleged Debtor, together with the other defendants, submitted a proposed form of judgment and a revised proposed form of judgment. In an affidavit dated October 18, 2011, executed in conjunction with the revised proposed judgment, the Alleged Debtor calculated the amounts due under the TPD loans as totaling $2,457,552. Although the Petitioning Creditors assert that the Alleged Debtor's affidavit constitutes an admission as to liability to Patton Drive under the Fustolo Guaranty, the Alleged Debtor maintains a dispute as to a material fact exists because the October 18, 2011 affidavit was signed only after the Suffolk Superior Court issued its Memorandum, which included allegedly usurious interest rates and required the parties to utilize such rates of interest in filing proposed forms of final judgment.

On October 21, 2011, the Suffolk Superior Court entered the Patton Drive Judgment. It provides in pertinent part, the following:

10

As to Count 2 of the Plaintiff's Verified Complaint alleging breach of contract, Judgment shall enter in favor of 50 Thomas Patton Drive, LLC and against Defendant 50 TPD Realty, LLC in the amount of $810,587.11. Post-judgment interest shall accrue on this award as set forth by the terms of the Promissory Note.

As to Count 3 of the Plaintiff's Verified Complaint alleging breach of contract, Judgment shall enter in favor of 50 Thomas Patton Drive, LLC and against Defendant 50 TPD Realty, LLC in the amount of $1,903,551.87. Post-judgment interest shall accrue on this award as set forth by the terms of the Promissory Note.

As to Count 3 of the Plaintiff's Verified Complaint alleging breach of contract, Judgment shall enter in favor of 50 Thomas Patton Drive, LLC and against Steven C. Fustolo in the amount of $6,759,948.50. Post-judgment interest shall accrue on this award as set forth by the terms of the guaranteed promissory notes.

***

As to Count 8 of the Plaintiff's Verified Complaint alleging violations of M.G.L. c. 93A, Sections 2 and 11, Judgment shall enter in favor of 50 Thomas Patton Drive, LLC and against Steven C. Fustolo.

For Counts 3 through 8, the Court awards attorneys' fees in the amount of $106,430 plus costs in the amount of $4,105.35. Each of the Defendants shall be jointly and severally liable for this amount. Interest shall accrue on the attorneys' fees and costs award at the statutory rate of interest.

Judgment on Counts One and Nine of the Verified Complaint shall enter against the Plaintiff and in favor of the Defendants.[4]

Counts Ten and Eleven of the Verified Complaint shall be dismissed as moot.

The Judgment included the full amounts of interest provided for by the underlying

---

[4] With respect to the conversion count, the Suffolk Superior Court in its September 28, 2011 Memorandum determined, based on extensive documentary evidence, and in part on the testimony of the Alleged Debtor himself, that the "actions of Fustolo constitute conversion of [Patton Drive] funds, and unfair and deceptive business practices in addition to fraud and breach of contract." The Suffolk Superior Court, however, found that the "Plaintiff has failed to prove certain other elements of these additional claims." Thus, it entered judgment in favor of the Defendants, including the Alleged Debtor, on Count One for fraud and Count Nine for conversion.

contracts, as well as provisions for the payment of attorneys' fees and costs. Specifically, the state court in its Memorandum of Findings and Rulings determined that the Randolph Notes, which were executed on July 17, 2008, were amended on September 18, 2008, to modify the terms of, and interest rates applicable to, the Randolph Notes, i.e., the $350,000 and $900,000 notes. The default interest rate applicable to both notes was increased from 18% to 35%. According to the state court, the Note Modification Agreements were executed by Fustolo and others as guarantors. The state court also found that, prior to the amendments of the Randolph Notes, "[o]n September 12, 2008, Schorer forwarded a 'usury notification form' to the Massachusetts Office of the Attorney General," although "[t]he Attorney General's Office did not docket receipt of the form(s) until September 23, 2008 [sic],"[5] after the date of the amendments of the Randolph Notes. In its Rulings of Law, the state court stated:

> Fustolo is not a "necessitous" debtor. The parties are both sophisticated businessmen, well aware of the risks of their profession, and well able to arrive at terms appropriate to those respective risks. I have evaluated the public policy factors applicable to the seeming technical violation of the statute - - in that the usury notices, while dated before th closing, were not docketed as received by the office of the Attorney General prior to the date the loan proceeds were deposited into attorney escrow. I have also assessed the circumstances surrounding the arguably delayed notice. I find and rule in my discretion that these circumstances do not provide a basis for preventing Plaintiff from collecting the full interest rate bargained for by the parties on the Randolph and Revere Beach notes.

---

[5] Trial exhibit 31 which was referenced by the state court, is attached to Attorney Edmands's affidavit. Patton Drive's letter to the Attorney General is dated September 12, 2008. It was stamped as received by the Office of the Attorney General, Criminal Bureau, on September 24, 2008.

Attorney Edmands in his affidavit established that although Patton Drive recovered

judgments against defendants other than the Alleged Debtor with respect to Counts Five

through Seven, it never pled that Fustolo was a co-obligor on the RBH Notes or that he

guaranteed the RBH Notes. He also established that Patton Drive never produced any

guaranty by any party, including Fustolo, of the RBH Notes, and never introduced any

evidence that Fustolo guaranteed the RBH Notes. In addition, the Superior Court's

Memorandum of Findings and Rulings contained no finding that such a personal guaranty

concerning the RBH Notes existed. Patton Drive did not submit an affidavit or evidence

to contest the contents of Attorney Edmands's affidavit.

4. The Appeal

On November 20, 2011, the Alleged Debtor filed a Notice of Appeal and Statement

of Issues on Appeal (the "Appeal Filings") relating to the Patton Drive Judgment.[6] His

Statement of Issues on Appeal provides:

> Pursuant to Rule 8(b)(1) of the Massachusetts Rules of Appellate Procedure,
> the Defendants in the above captioned case state that *the principal issues on*
> *appeal relate to the calculation of interest and default fees on the promissory notes*
> *at issue in this case and on the amount of the damages awarded against the*
> *Defendant Steven C. Fustolo, individually.* Accordingly, the Defendants do not
> intend to include in the record any portion of the transcripts of proceedings.

---

[6] Pursuant to Mass. R. Civ. P. 62(d), "[e]xcept as otherwise provided in these
rules, the taking of an appeal from a judgment shall stay execution upon the judgment
during the pendency of the appeal." *See also* Mass. Gen. Laws ch. 235, § 16 ("No
execution shall issue upon a judgment until the exhaustion of all possible appellate
review thereof, and the receipt by the clerk of the trial court of the appropriate rescript
or order.").

(emphasis supplied).  The Alleged Debtor did not state specifically that he was appealing

the Suffolk Superior Court's findings and conclusions that he violated Chapter 93A,

although damages were not awarded to Patton Drive under Count Eight.

The Alleged Debtor filed, but later withdrew on August 9, 2013, an Emergency

Motion for Stay of Judgment.  In the Emergency Motion for Stay of Judgment (the "Stay

Motion"), he stated:

> In entering judgment for the Plaintiff on count IV charging Mr. Fustolo with
> liability for his personal guaranty of the 50 TPD notes, the Court included the
> total of all amounts due under all four notes, including the RBH notes
> concerning which he did not execute a guaranty.  As a result, the judgment
> holds Mr. Fustolo liable for approximately $2.7 million due on the two 50
> TPD Notes and an additional amount of approximately $4 million on the two
> RBH notes for a a [sic] total liability of $6.7 million.  As a result, the Judgment
> overstates Mr. Fustolo's personal liability by approximately $4 million.

5. Additional Facts

Patton Drive contends that the Alleged Debtor has admitted he owes damages

awarded to it on its  contract claims.  At a deposition held on October 4, 2011, the Debtor

testified: "So they got a contract claim, as they should get a contract claim.  We owe them

the money.  I owe them the money." He also stated that "the contract claim is the only

thing the judge [the Suffolk Superior Court] got right," although he stated he was referring

to the direct contract obligation of RBH alleged in Counts Six and Seven of the Complaint.

Patton Drive also asserts that the Alleged Debtor has not paid any portion of the

Patton Drive Judgment. The Debtor, however, states that certain payments were made

against the judgment but erroneously were not credited by the Suffolk Superior Court.

Countering the Petitioning Creditors' contention, in partial reliance upon the state court's

14

Memorandum, that he never tendered payment to Patton Drive under the Fustolo

Guarantee, the Alleged Debtor asserts:

> Patton Drive admits receipt of five monthly payments of $4,500 on the
> $900,000 Promissory Note. In addition Patton Drive received, but failed to
> acknowledge . . . the receipt, of additional funds comprising property of
> either 50 TPD or the guarantors of the 50 TPD Notes, including, but not
> necessarily limited to, (a) 6 monthly payments of $1,800 commencing in
> October of 2009, (b) 10 monthly payments of $1,900 commencing on April of
> 2010, (c) funds totaling approximately $40,000 that were the property of 50
> TPD, and (d) whatever proceeds were generated by the foreclosure on the
> Membership Pledge.

In September or November of 2010, Patton Drive foreclosed upon its pledge of

Fustolo's membership interest in TPD and sold Fustolo's ownership to Patton Drive or an

affiliate of Patton Drive, generating an unknown amount.

The Randolph Notes and all amounts due under them are secured by a mortgage

on 50 Thomas Patton Drive, Randolph, Massachusetts, valued between $6 million and $6.5

million, which mortgage is subordinate to a first mortgage held by Stoneham Savings Bank

in the original sum of $3.45 million.  The Randolph Notes also are secured by mortgages

on real property located at 5 High Street Medford, Massachusetts, which is valued between

$5.4 million and $5.8 million. The Petitioning Creditors, however, maintain that the

collateral pledged for the Randolph Notes does not provide complete or sufficient security

for all of the amounts due under them, adding that any factual issue of whether the

Randolph Notes are secured is immaterial because the Patriot Judgment of approximately

$20 million is wholly unsecured and exceeds $14,425.20, the sum by which undisputed

claims in the aggregate must exceed, pursuant to § 303(b)(1), "the value of any lien on

property of the debtor securing such claims held by the holders of such claims."

The Patton Drive Judgment against Fustolo on Count Four exceeds the total liability of TPD, which he guaranteed, as it incorrectly includes approximately $4.0 million awarded to Patton Drive for breach of the RBH Notes which he did not guaranty, a point conceded by counsel to the Petitioning Creditors at the hearing held on October 23, 2013. Both Fustolo in his affidavit and Attorney Edmands in his affidavit explain and emphasize that Patton Drive neither asserted in its Verified Complaint nor alleged in its requests for findings that Fustolo executed a guaranty of the RBH notes, that Patton Drive submitted no evidence to support the existence of any personal guaranty of the RBH notes by Fustolo, and that the state court's Memorandum of Findings and Rulings contains no reference to such a guaranty.

**IV. DISCUSSION**

A. <u>Summary Judgment Standard</u>

The United States Bankruptcy Appellate Panel of the First Circuit succinctly set forth the standard for determining summary judgment motions in <u>Weiss v. Wells Fargo Bank, N.A. (In re Kelly)</u>, 498 B.R. 392 (B.A.P. 1st Cir. 2013). It stated:

> "In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 762 (1st Cir.1994). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." <u>Id.</u>; *see also* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." <u>In re Varrasso</u>, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise

16

> properly supported motion for summary judgment; the requirement is that
> there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>,
> 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

<u>In re Kelley</u>, 498 B.R. at 397 (footnote omitted).

Applying that standard to the Cross-Motions for Summary Judgment, the Court

finds that the material facts necessary to decide the Cross-Motions are not in dispute.

Although the parties dispute certain facts, such as payments made by the Alleged Debtor

to Patton Drive prior to entry of the Patton Drive Judgment and the value of collateral to

secure Patton Drives debt, the Court finds that the disputed facts are not material to

resolution of the issue of whether an order for relief should enter with respect to the

Involuntary Petition.

B. <u>Applicable Law</u>

1. The Statute

Section 303 of the Bankruptcy Code provides in relevant part the following:

b) An involuntary case against a person is commenced by the filing with the
bankruptcy court of a petition under chapter 7 or 11 of this title--

> (1) by three or more entities, each of which is either a holder of
> a claim against such person that is not contingent as to liability
> or the subject of a bona fide dispute as to liability or amount,
> or an indenture trustee representing such a holder, if such
> noncontingent, undisputed claims aggregate at least $15,325
> more than the value of any lien on property of the debtor
> securing such claims held by the holders of such claims;

11 U.S.C. § 303(b)(1).  At the time the Involuntary Petition was filed against the Alleged

Debtor, the applicable amount by which undisputed claims had to exceed the value of any

lien on property of the debtor securing such claims was $14,425. *See* 11 U.S.C. § 104(c).

2. Applicable Law

a. The split of authority with respect unstayed, state court judgments where an appeal is pending

A critical issue, which this Court must address is whether to follow the Drexler rule or the Byrd rule. In a recent decision, the United States Court of Appeals for the Ninth Circuit considered "a question of first impression" germane to resolution of the cross-motions before this Court, namely whether [u]nder § 303(b)(1) of the Bankruptcy Code, 11 U.S.C. § 303(b)(1), . . . an unstayed state judgment on appeal [is] per se a "claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount?'" Marciano v. Chapnick (In re Marciano), 708 F.3d 1123, 1124 (9th Cir. 2013)(quoting 11 U.S.C. § 303(b)(1)). In answering the question in the affirmative, the Court observed:

> The bankruptcy court and the BAP successively held that an unstayed non-default state judgment is a claim not in bona fide dispute as to liability or amount under § 303(b)(1). In re Marciano, 446 B.R. at 422; In re Marciano, 459 B.R. at 54–55. Because the issue turns on interpretation of the Bankruptcy Code, we review those holdings de novo. Temecula v. LPM Corp. (In re LPM Corp.), 300 F.3d 1134, 1136 (9th Cir.2002).
>
> Perhaps because the Bankruptcy Code does not define "bona fide dispute," interpretation of § 303(b)(1) has divided courts. The majority view—the " Drexler " rule—is that unstayed non-default state judgments on appeal are not subject to bona fide dispute for purposes of § 303(b)(1). In re Drexler, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986); *accord* In re AMC Investors, LLC, 406 B.R. 478, 487 (Bankr. D. Del. 2009); Norris v. Johnson (In re Norris), 1997 WL 256808, at *5, 114 F.3d 1182 (5th Cir.1997); In re Euro–Am. Lodging Corp., 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007) (per curiam) (unpublished); In re Amanat, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005); In re Raymark Indus., Inc., 99

18

B.R. 298, 300 (Bankr. E.D. Pa. 1989); <u>In re Caucus Distribs., Inc.</u>, 83 B.R. 921, 929 (Bankr. E.D. Va. 1988). Cases following this approach reason that it would be "contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a 'bona fide dispute.'" <u>In re AMC Investors</u>, 406 B.R. at 484 (quoting <u>In re Drexler</u>, 56 B.R. at 967).

The minority approach — the "<u>Byrd</u>" rule — holds that, although "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments[,] [s]uch judgments do not guarantee the lack of a bona fide dispute." <u>Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)</u>, 357 F.3d 433, 438 (4th Cir. 2004). Under the <u>Byrd</u> rule, the petitioning creditor makes a "prima facie" case of compliance with § 303(b)(1) by presenting an unstayed state judgment, but the debtor is given the opportunity nonetheless to demonstrate the existence of a bona fide dispute as to liability or the amount of the debt. <u>Id.</u> at 439; *accord* <u>In re Henry S. Miller Commercial, LLC</u>, 418 B.R. 912, 920–21 (Bankr. N.D. Tex. 2009); <u>In re Graber</u>, 319 B.R. 374, 377–78 (Bankr. E.D. Pa. 2004); <u>In re Prisuta</u>, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990); <u>In re Tucker</u>, No. 5:09–bk–914, 2010 WL 4823917, at *3 (Bankr. N.D. W.Va. Nov. 22, 2010); <u>In re Briggs</u>, Nos. 07–34534, 07–34533, 2008 WL 190463, at *2 (Bankr. N.D. Tex. Jan. 18, 2008).

<u>Marciano</u>, 708 F.3d at 1126 (footnote omitted).   The Ninth Circuit concluded that the

<u>Drexler</u> rule was "correct as a matter of both statutory interpretation and federalism."  <u>Id.</u>

In support of its holding, the Ninth Circuit, while noting that the petitioning

creditors were free under California law to collect the amounts owed under the judgments

at the time the involuntary petition was filed, considered an unstayed state court judgment

to be an objective measure of the validity of the claim and warned of "'turn[ing] the court

into an odds maker on appellate decision-making.'" <u>Marciano</u>, 708 F.3d at 1127 (quoting

<u>In re AMC Investors, LLC</u>, 406 B.R. 478, 485 (Bankr. D. Del. 2009)).[7]  In addition, the court

---

[7] The Ninth Circuit added:

criticized the Byrd approach as running counter to principles of federalism, citing 28 U.S.C.

§ 1738 ("Such Acts, records and judicial proceedings or copies thereof, so authenticated,

shall have the same full faith and credit in every court within the United States and its

Territories and Possessions as they have by law or usage in the courts of such State,

Territory or Possession from which they are taken."). Marciano, 708 F.3d at 1128. The

Ninth Circuit determined that if the a creditor is entitled to have a judgment treated as

valid in state courts, the bankruptcy court should not be permitted to treat the judgment

differently. Id.

The Ninth Circuit also considered "a central purpose of the involuntary bankruptcy

laws—to 'protect the threatened depletion of assets or to prevent the unequal treatment of

similarly situat[ed] creditors,'" as well as the concomitant prevention of a race to the

courthouse, determining that the Drexler rule served that purpose. Id. (quoting In re

Manhattan Indus., Inc., 224 B.R. 195, 200 (Bankr. M.D. Fla. 1997)).

In contrast to the approach taken by the Ninth Circuit in Marciano and the court in

---

Such a process, which almost always will turn on a judgment by an Article
I federal court as to whether a state trial court erred as a matter of state
law in entering the judgment or whether a state court erred in denying a
stay pending appeal, cannot be more "objective" than simply honoring the
unstayed state judgment. If required to evaluate the merits of a debtor's
appeal at the time an involuntary petition is filed (often before appellate
briefs are filed), reasonable jurists might well reach differing decisions.
But there can be no dispute as to whether a state court judgment on
appeal has been stayed.

Marciano, 708 F.3d at 1127.

Drexler, the Fourth Circuit in In re Byrd stated that "[t]he mere fact that a judgment is

pending appeal does not mean that a bona fide dispute exists, any more than the fact that

a state court has rendered judgment means that a bona fide dispute does not exist." 357

F.3d at 439. It added that "a debtor's subjective beliefs do not give rise to a bona fide

dispute." Id. at 440. The Fourth Circuit addressed the conclusion of the district court

which reversed the decision of the bankruptcy court. According to the Fourth Circuit, the

district court focused on "'the preclusive effect given to [each] judgment under the law of

the forum in which the judgment was rendered,'" such that the issue was whether under

state law the unstayed state court judgments were final for purposes of res judicata. Byrd,

357 F.3d at 440. The Fourth Circuit concluded that such an approach "asks the wrong

question." Id. In short, the court reversed the decision of the district court because the

alleged debtor failed "to raise any substantial factual or legal questions about the continued

viability of those judgments."[8]

In Metz v. Dilley (In re Dilley), 339 B.R. 1 (B.A.P. 1st Cir. 2006), the United States

Bankruptcy Appellate Panel of the First Circuit cited Byrd with approval, noting that the

petitioning creditors must establish a prima facie case at which point the burden shifts to

the alleged debtor to establish a bona fide dispute, adding that circuit courts and courts in

the First Circuit addressing the issue of what constitutes a bona fide dispute have adopted

an objective standard. 339 B.R. at 6. See., e.g., In re Lever Dev., LLC., No. 11-44639-MSH,

---

[8] Of course, the bankruptcy court "need not resolve the merits of the bona fide
dispute, but simply determine whether one exists." Byrd, 357 F.3d at 437.

2012 WL 5053441 (Bankr. D. Mass. Oct. 18, 2012); In re LaStanza Diva Ristorante, Inc., No.

08-18911, 2009 WL 995462 (Bankr. D. Mass. April 10, 2009).  No decisions  in the First

Circuit, however, have involved unstayed state court judgments on appeal.

> b. The split of authority as to whether a creditor whose claims
> are disputed in part and undisputed in part as to amount, is
> disqualified as a petitioning creditor for purposes of 11 U.S.C.
> § 303(b).

In Montana Dept. of Revenue v. Blixseth, No. 2:13-cv-01324-JAD, 2013 WL 5408668

(D. Nev. Sept. 25, 2013), the United States District Court for the District of Nevada certified

a question of law requiring resolution of conflicting decisions to the United States Court

of Appeals for the Ninth Circuit.  It stated:

> Mr. Blixseth [the alleged debtor] and the Bankruptcy Court relied on a
> significant body of caselaw interpreting BAPCPA's amendment to 11 U.S.C
> § 303(b) to provide that any bona fide dispute as to amount, whether it brings
> the creditor's claim under the undisputed claim threshold amount or not,
> disqualifies the creditor's claim in total. See Bankr. Case 11–15010-wtt, Doc.
> 528 at 11–13 (Bankruptcy Court Order Dismissing the Involuntary Case; and
> Same, Doc. 515 at 28 (Blixseth's Post–Trial Closing Brief in Support of
> Amended Motion to Dismiss Involuntary Case) (both citing to In re
> Excavation, Etc., LLC, 2009 WL 1871682 at *1–2 (Bankr. D. Or. 2009)
> (unpublished); In re Elverson, 2013 WL 2138875 at *8 (Bankr. E.D. Pa. 2013);
> In re Skyworks Ventures, Inc., 431 B.R. 573, 578 n. 1 (Bankr. D. N.J. 2010); In
> re Rosenberg, 414 B.R. 826, 846 (Bankr. S.D. Fla. 2009); In re Euro–American
> Lodging Corp., 357 B.R. 700, 712 n. 8 (Bankr. S.D.N.Y. 2007); In re Regional
> Anesthesia Associates PC, 360 B.R. 466, 470 (Bankr. W.D. Pa. 2007); In re
> Mountain Dairies, Inc., 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007). MDOR,
> however, urged an alternative line of cases that rejects this disqualifying
> approach, which MDOR characterizes as indicative of the "unambiguous
> trend nationwide over the past several years." Doc. 21 at 6–8 (citing In re
> DemirCo Holdings, Inc., 2006 WL 1663237 at *3 (Bankr. C.D. Ill. 2006)
> (unpublished); In re Miller, 489 B.R. 74, 81–82 (Bankr. E.D. Tenn. 2013) ("the
> court does not agree that post-BAPCPA § 303(b) requires an all-or-nothing
> analysis: that the statutory language "as to [']liability or amount' should be
> read as meaning that any dispute as to any portion of the amount of a claim

owed disqualifies a creditor from being a petitioning creditor"); In re Tucker, 2010 WL 4823917 at *6 (Bankr. N.D. W.Va. 2010) (slip copy) ("[t]he better reasoned authority suggests that a petitioning creditor is not disqualified even if a bona fide dispute exists regarding a portion of its claim"); In re Wishgard, LLC, 2013 WL 1774707 at *5 (Bankr. W.D. Pa. 2013) (slip copy) ("this Court finds the analysis in Miller to be the persuasive interpretation"); In re Roselli, 2013 WL 828304 at *9 (Bankr. W.D.N.C. 2013) (slip copy); In re Mountain Country Partners, LLC, 2012 WL 2394714 at *3 (Bankr. S.D.W.V. 2012) (slip copy). This split in authority qualifies this matter for certification under 28 U.S.C. § 158(d)(2)(A)(iii).

2013 WL 5408668 at *2.  Notably, in In re Byrd, the Fourth Circuit observed:

> Even if Byrd had demonstrated a bona fide dispute with regard to any portion of Platinum's claim that was for finance charges, Platinum still might have had an undisputed claim for principal in excess of § 303(b)(2)'s $11,625 threshold. See In re Cohn-Phillips, Ltd., 193 B.R. 757, 763 (Bankr. E.D. Va. 1996) ("A bona fide dispute must exist as to the validity of an entire claim and not merely some of the claim.") (citing In re Fox, 162 B.R. 729, 732 (Bankr. E.D. Va. 1993)).

In re Byrd, 357 F.3d at 440 n.2.  Notably, the Byrd decision preceded the 2005 amendments

to § 303(b)(1) occasioned by BAPCPA.  No First Circuit decisions address the issue raised

by the Nevada district court.

    C. Analysis

        1. The claims of the Petitioning Creditors far exceed the value
        of any liens on property of the Alleged Debtor

The  first issue the Court must resolve is whether Fustolo's assertion that Patton

Drive is fully secured warrants dismissal of the Involuntary Petition. The plain language

of § 303(b)(1) compels the conclusion that all claims are to be considered in comparing the

total amount of claims and the value of any lien on property of the debtor securing such

claims.  Where Patriot holds an unsecured claim of approximately $20 million, it is clear

that that sum exceeds the value of any liens on property of the Alleged Debtor by $14,425.

Secondly, Patton Drive foreclosed the Alleged Debtor's pledged membership interest in

TPD so he no longer has even an indirect interest in the property located at 50 Thomas

Patton Drive, Randolph, Massachusetts, which secures Patton Drive's claim.  In addition,

although Patton Drive has mortgages on property located in Medford, Massachusetts, the

Debtor, individually, does not own 5 High Street Medford, Massachusetts; rather,

according to the Superior Court, "his corporate entities, Huntington Properties and 5 High

Street . . . are the owners as tenants in common of 5 High Street, Medford, Massachusetts."

Thus, the issue of whether Patton Drive is fully or partially secured is irrelevant to

resolution of the cross-motions for summary judgment.

2. The <u>Byrd</u> rule applies

Although the Petitioning Creditors argue that the <u>Drexler</u> rule should apply to

unstayed state court judgments, this Court shall apply the <u>Byrd</u> rule under the

circumstances of this case for two reasons.  In the first place, bankruptcy courts and the

bankruptcy appellate panel in this circuit have adopted the burden shifting approach set

forth in <u>Byrd</u>, although not specifically with respect to unstayed state court judgments on

appeal.  In the second place, the Petitioning Creditors conceded at the October 23, 2013

hearing that a bona fide dispute exists as a result of the inclusion in the Patton Drive

Judgment of damages attributable to the Alleged Debtor's ostensible guaranty of

promissory notes executed by RBH.  Because Patton Drive neither asserted in its Verified

Complaint nor alleged in its requests for finding that Fustolo had executed a guaranty of

24

the RBH notes, because Patton Drive submitted no evidence to support the existence of any personal guaranty of the RBH notes, because the state court's Memorandum of Findings and Rulings contains no reference to such a guaranty, and because counsel to the Petitioning Creditors conceded that Fustolo did not give a personal guaranty of the RBH notes, there is a bona fide dispute as to the amount of the judgment that satisfies the standard articulated in <u>Byrd</u>.  Although the Court is respectful of the rationale of the Ninth Circuit in <u>Marciano</u>, the instant case exemplifies the rare circumstance where the amount of the judgment is in bona fide dispute.[9]  Indeed, the decision in <u>In re Henry S. Miller Commercial, LLC</u>, 418 B.R. 912 (Bankr. N. D. Tex. 2009), would appear to set forth a workable standard which gives deference to federalism, yet recognizes rare circumstances where an unstayed final judgment may be the subject of a bona fide dispute. In <u>In re Henry S. Miller Commercial, LLC</u>, the court stated:

> *[T]he question is whether an unstayed judgment (even if it is on appeal) essentially creates an irrebuttable presumption of no bona fide dispute? In other words, is there anything an alleged debtor can do, from a proof-standpoint, to present evidence of a bona fide dispute as to liability or amount when there is an unstayed judgment?*

---

[9]  The Court need not consider whether application of a usurious interest rate to the TPD notes as set forth in the Patton Drive Judgment either presents a potentially viable appellate issue or creates a bona fide dispute for purposes of the <u>Byrd</u> rule where Patton Drive advanced funds under the TPD on July 18, 2008; Patton Drive transmitted a usury notification letter to the Attorney General on or around September 12, 2008, the TPD notes were amended on September 18, 2008 to increase the default interest rate to 35%, and the Attorney General received Patton Drive's letter on September 24, 2008.  *See* <u>Clean Harbors, Inc. v. John Hancock Life Ins. Co.</u>, 64 Mass. App. Ct. 347, 365 (2005). Were it not for the summary judgment record as to the RBH notes and the admission by the Petitioning Creditors that Fustolo did not guaranty the RBH notes, this Court would be compelled to find that Fustolo did not satisfy his burden with respect to a bona fide dispute as to liability or amount as to his usury argument.

Most courts essentially hold no. . . . But this court views this, first, as arguably inconsistent with the literal wording of the statute. The statute could have referred to holders of judgments in Section 303(b), but, instead, Section 303(b) uses a more amorphous and flexible concept, by referring to claims "not the subject to [sic] a bona fide dispute as to liability or amount." . . .

In reconciling all the authority on this  . . ., this court holds as follows. *Generally*, an unstayed judgment should not be deemed to be the subject of a "bona fide dispute" as to liability or amount, even if it is on appeal. However, the existence of an unstayed judgment, in this court's view, should not *preclude* the inquiry into whether a bona fide dispute exists as to the amount or validity of a claim. In other words, an unstayed judgment does not create an irrebuttable presumption of no bona fide dispute, just a presumption. If there are objective circumstances that might give rise to a bona fide dispute as to liability or amount ( e.g., perhaps a default judgment where facts were not actually litigated; perhaps a judgment inadvertently entered against a non-party; perhaps where subsequent events cast doubt upon the judgment's enforceability, such as due to a payment of the judgment debt or posting of a bond, or even some sort of appellate court holding in another case that changes the law and suggests it is inevitable that the unstayed judgment will be reversed), then having an unstayed judgment may not pass muster under Section 303. . . .

An appeal alone does not create a bona fide dispute. But a highly specialized fact pattern can conceivably guide a court to make an exception to the general rule recognizing the finality/enforceability of an unstayed judgment. . . .

418 B.R. at 921-22 (emphasis in original).  *See also* In re Baron, No. 12-37921, 2013 WL 3233518 at *7 (Bankr. N.D. Tex. June 26, 2013); In re Soderberg and Schafer CPAS, LLC, 441 B.R. 262, 265 (Bankr. N.D. Ohio  2010).

Because of the $4 million added to the Patton Drive Judgment as a result of the Alleged Debtor's phantom guaranty of the RBH Notes, and the evidence presented by the Alleged Debtor, together with the admission of counsel to the Petitioning Creditors, the

Court concludes that the Alleged Debtor has sustained his burden and rebutted the presumption associated with unstayed state court judgments as to a portion of the Patton Drive Judgment.

In this regard, the Court must determine the issue of whether Mass. R. Civ. P. 62(d)("[e]xcept as otherwise provided in these rules, the taking of an appeal from a judgment shall stay execution upon the judgment during the pendency of the appeal.") and Mass. Gen. Laws ch. 235, § 16 ("No execution shall issue upon a judgment until the exhaustion of all possible appellate review thereof, and the receipt by the clerk of the trial court of the appropriate rescript or order.") effectuate a stay of the Patton Drive Judgment or whether, as the Petitioning Creditors contend, the Patton Drive Judgment is distinct from an execution to enforce it and thus is not stayed by operation of law during an appeal. The Petitioning Creditors contend that because they are not prohibited from conducting post-judgment discovery or requesting attachment of real property the judgment itself is not stayed. *See* A.W. Farrell Assocs., LLP. v. Haddon, 72 Mass. App. Ct. 1115, 893 N.E.2d 96 (2008). The Court concludes that the Petitioning Creditors' contentions are consistent with the finality of the judgment for purposes of claim preclusion, as well as the Alleged Debtor's decision to seek an Emergency Motion for Stay of Judgment.

> 3. The phrase "liability or amount," does not mean that any dispute as to any portion of the amount of a claim owed disqualifies a creditor from being a petitioning creditor.

The final issue for resolution is whether the dispute as to the $4 million attributable

to the phantom guaranty of the RBH Notes included in the Patton Drive Judgment warrants exclusion of Patton Drive as a petitioning creditor, thereby compelling dismissal of the Involuntary Petition because of lack of the requisite number of petitioning creditors.

Section 303(b)(1) requires that a petitioning creditor hold a "claim" against the debtor. Section 101(5)(A) of the Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A). Here, the issue is whether the Court can consider the components of the Patton Drive Judgment as separate claims for purposes of § 303(b)(1). The second and third counts of Patton Drive's Verified Complaint concern the TPD Notes and the fourth count concerns Fustolo's Guaranty. Count Four references the Fustolo Guaranty executed on July 17, 2008 as modified on September 18, 2008. The Final Judgment entered on October 21, 2011 sets forth judgments on Counts Two and Three in favor of Patton Drive and against TPD in the amounts of $810,587.11 and $1,903,551.87, respectively, and these are the sums which Fustolo guaranteed. Accordingly, this Court concludes that, of the total judgment amount entered against Fustolo, $2,714,138.98 is not subject to bona fide dispute.

As the Court in <u>Montana Dept. of Revenue v. Blixseth</u>, observed, there are conflicting decisions regarding whether a bona fide dispute as to any amount disqualifies the claim in total. *See* 2013 WL 5408688 at *2. Under the circumstances of this case, the Court must determine the issue.

According to the court in <u>In re Miller</u>, 489 B.R. 74 (Bankr. E.D. Tenn. 2013),

The statute does not, on its face, require a petitioner to hold a liquidated

28

claim. The proof that is required is only that a claim exists which is of the type required and is in at least the amount required. For a bona fide dispute to be relevant, it must at least have the potential to reduce the total of petitioners' claims to an amount below the statutory threshold.

489 B.R. at 82 (citing In re Focus Media, Inc., 378 F.3d 916, 926 (9th Cir.2004), *cert. denied*, 544 U.S. 968 (2005)).

Because the Petitioning Creditors hold judgments, their "claims" could be considered, and in the case of the Patriot and Mayer are, their judgments, not the underlying claims for breach of contract. In the case of Patton Drive, however, where its judgment is subject to a bona fide dispute in the calculation of its damages due to the phantom guaranty of the RBH notes, its claim must be evaluated somewhat differently than those of Patriot and Mayer. Patton Drive's total claim has discrete damage components only two of which the Debtor seriously challenged, namely the approximately $4 million attributable to the "guaranty" of the RBH Notes and the amounts attributable to the usurious default interest rates applicable to the Randolph Notes.

The Alleged Debtor, in his proposed form of judgment and revised proposed form of judgment, as well as in his affidavit associated with the computation of damages, submitted to the Suffolk Superior Court, included sums due pursuant to his guaranty of the TPD notes, as well as default interest at 35%. In his Statement of Issues on Appeal, he indicated that the issues related to "the calculation of interest and default fees on the promissory notes at issue" and "the amount of the damages award against Defendant Steven C. Fustolo," an obvious reference to the $4 million phantom guaranty. In his

deposition conducted on October 4, 2011, he admitted that he breached his contract with

Patton Drive, stating:  "So they got a contract claim, as they should get a contract claim.

We owe them the money.  I owe them the money."

This Court finds the rationale of the court in In re DemirCo Holdings, Inc., No. 06-

70122, 2006 WL 1663237  (Bankr. C.D. Ill. June 9, 2006), and its progeny to be persuasive.

In that case, the court stated:

> The statute does not, on its face, require a petitioner to hold a liquidated
> claim. The proof that is required is only that a claim exists which is of the
> type required and is in at least the amount required. For a bona fide dispute
> to be relevant, it must at least have the potential to reduce the total of
> petitioners' claims to an amount below the statutory threshold. See In re
> Focus Media, Inc., 378 F.3d 916, 926 (9th Cir.2004), cert. denied 544 U.S. 968,
> 125 S.Ct 1742 (2005). . . .
>
> [The petitioning creditor] argues that the recent changes made in the
> Bankruptcy Code demand a different result. The Bankruptcy Abuse
> Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the
> phrase "as to liability or amount" to modify the phrase "bona fide dispute".
> 11 U.S.C. § 303(b)(1), (h)(1). [The petitioning creditor] argues that this
> amended language shows legislative intent to make any dispute as to
> amount a basis to deny entry of an order for relief. This Court disagrees.
>
> The legislative history from 1984 shows a Congressional intent that the
> addition of the "bona fide dispute" phrase to the statute originally was
> intended to cover disputes as to both liability and amount. See 130 Cong. Rec.
> S7618 (daily ed. June 19, 1984) (remarks of Sen. Baucus). The addition of the
> words "as to liability and amount" [sic] in the 2005 amendments is
> compatible with that original intent and no legislative history was found to
> suggest otherwise. Prior to BAPCPA, some courts faced with "bona fide
> dispute" questions focused principally on liability issues. See, e.g. In re Seko
> Investments, Inc., 156 F.3d 1005, 1008 (9th Cir. 1998), cert. denied 526 U.S.
> 1066, 119 S.Ct. 1458 (1999). Thus, the amendment appears to clarify the prior
> legislative intent. With the dearth of committee comments and legislative
> history available to interpret BAPCPA, this Court cannot presume that
> Congress added the phrase "as to liability and amount" with the intent that

30

the claims of involuntary petitioners must now be fully liquidated either by agreement or judgment so that no dispute exists as to any portion of such claims. Without clear legislative intent, this Court cannot presume such a change in the law and declines to do so.

In re DemirCo Holdings Inc., 2006 WL 1663237, at *3. *See also* Alan N. Resnick and Henry

J. Sommer, eds., *Collier on Bankruptcy* ¶ 303.11[2] (16th ed. 2013). In *Collier*, the authors

observed:

> Following the 2005 amendments, the question is whether a petitioning creditor is disqualified if a bona fide dispute exists regarding a *portion* of its claim.   Many courts seem to conclude that it is self-evident that the amendments change the analysis. . . .   Other courts think that the 2005 amendments do not change the analysis.
>
> \*\*\*
>
> Why would Congress want to disqualify a creditor whose claim is noncontingent and at least partially undisputed? Section 303's requirements regarding type and number of claims are an attempt to balance a debtor's interest in staying out of bankruptcy with the interest of creditors in putting a debtor into bankruptcy. Why shouldn't the undisputed, noncontingent portion of a petitioning creditor's claim count? Why disqualify the creditor in toto? Why effectively bar that creditor's access to the bankruptcy forum? Of course, as a practical matter, the prudent creditor will take the suggestion loudly whispered by some courts and simply assert the undisputed non-contingent portion of its claim.

Id. at ¶ 303.11[2], 303-33-35 (footnotes omitted).

Under the circumstances of this case, it would defy logic to adopt what has been

characterized as an "all-or-nothing" approach, *see* In re Miller, 489 B.R. 74, 83 (Bankr. E.D.

Tenn. 2013).   This Court concludes that the finality of the Patton Drive Judgment is

dispositive and entitled to full faith and credit with respect to all issues raised by the

Alleged Debtor, including application of the usurious default interest rates to the Randolph

Notes, other than the $4 million added due to the guaranty of the RBH Notes.  Because

counsel to the Petitioning Creditors conceded the existence an error in the Patton Drive

Judgment with respect to the damages attributable to the phantom guaranty of the RBH

notes, however, that portion of the judgment may not be considered. Because of the

magnitude of the remaining components of the Patton Drive Judgment against Fustolo, the

Court concludes that Patton Drive qualifies as a petitioning creditor as a portion of its claim

is not subject to a bona fide dispute.

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter the order for relief.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated:  December 16, 2013