# EXHIBIT A

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

# NOTE

LOAN # :

JANUARY 10TH, 2008                 BRAINTREE                         MA
[Date]                              [City]                         [State]

115 SALEM STREET UNIT #13, BOSTON, MA  02113
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   283,500.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is   UNION CAPITAL MORTGAGE BUSINESS TRUST

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of      7.125      %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  1ST      day of each month beginning on  MARCH 1ST, 2008      . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on  FEBRUARY 1ST, 2038'   , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at  45 BRAINTREE HILL PK., STE 400, BRAINTREE,  MA 02184
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,910.00   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207)          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
STEVEN C. FUSTOLO                        -Borrower                                                  -Borrower
by Marcy Breivogel his attorney in fact

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                  -Borrower

Pay to the order of, without recourse

_____

HSBC MORTGAGE CORPORATION (USA)                          [Sign Original Only]

By: _____
    Nilda Feliz, V.P. Secondary Marketing

VMP-5N (0207)                    Page 3 of 3                    Form 3200 1/01

## ALLONGE TO PROMISSORY NOTE

For purposes to further endorsement of the following described note, this allonge is affixed and becomes a permanent part of said note this _10_ day of _January_, 2008

Mortgage Loan Number:_____

Investor Loan Number:_____

Loan Amount: $ _283,500_____

Borrower(s): _Steven C. Fustolo by Marcy_
_Breivogel Attorney-in-fact_

Property Address: _115 Salem Street_
_Unit #13_
_Boston, MA 02113_

*PAY TO THE ORDER OF*

HSBC MORTGAGE CORPORATION (USA)

*WITHOUT RECOURSE*

Union Capital Mortgage Business Trust
45 Braintree Hill Park
Suite No. 400
Braintree, MA 02184

_____
John K. Richman, Manager of UCM, LLC, Trustee

Attested hereto
*Francis M. Roache*

Francis M. Roache
Register of Deeds

2008 00003112
Bk: 42960 Pg: 158    Doc: MTG
Page: 1 of 23    01/11/2008 02:49 PM

Return To:
TAYLOR, BEAN AND WHITAKER

1417 N. MAGNOLIA AVENUE
OCALA, FL  34475

Prepared By:
UNION CAPITAL MORTGAGE BUSINESS TRUST
45 BRAINTREE HILL PK., STE 400
BRAINTREE, MA 02184
JESSICA HARRIS

——————————————————— [Space Above This Line For Recording Data] ———————————————————

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    JANUARY 10TH, 2008
together with all Riders to this document.
(B) "Borrower" is STEVEN C. FUSTOLO

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022 1/01

-6A(MA) (0401)
Page 1 of 16    Initials:
VMP Mortgage Solutions (800)521-7291

*(handwritten left margin: Boston  13  115 Salem st. Unit 13)*

(D) "Lender" is   UNION CAPITAL MORTGAGE BUSINESS TRUST

Lender is a  A BUSINESS TRUST
organized and existing under the laws of  MASSACHUSETTS
Lender's address is 45 BRAINTREE HILL PK., STE 400, BRAINTREE,  MA 02184

(E) "Note" means the promissory note signed by Borrower and dated  JANUARY 10TH, 2008
The Note states that Borrower owes Lender  TWO HUNDRED EIGHTY THREE THOUSAND FIVE
HUNDRED AND  NO/100.                                                                    Dollars
(U.S. $    283,500.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  FEBRUARY 1ST, 2038
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Exhibit A |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____   _____

VMP®-6A(MA) (0401)                    Page 2 of 15                    Form 3022  1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
COUNTY                                       of                          SUFFOLK                      :
   [Type of Recording Jurisdiction]                                      [Name of Recording Jurisdiction]:

                                                                      which currently has the address of
Parcel ID Number:                                                                                    [Street]
                          115 SALEM STREET UNIT #13
                                                         [City] , Massachusetts      02113      [Zip Code]
BOSTON
("Property Address"):
     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

                                                                      Initials
                                                                      Form 3022  1/01

-6A(MA) (0401)                    Page 3 of 15

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Initials: _____

Form 3022  1/01

VMP®-6A(MA) (0401)                                          Page 4 of 15

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

-6A(MA) (0401)                    Page 6 of 15                    Form 3022    1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: *[signature]*

Form 3022    1/01

VMP®-6A(MA) (0401)    Page 7 of 15

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _Ｊ.Ｃ.Ｈ._ _by_ _mns_

VMP -6A(MA) (0401)                    Page 8 of 15                    Form 3022  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _____

VMP®-6A(MA) (0401)          Page 8 of 15          Form 3022   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: *[handwritten initials]*

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

Initials: _____

Form 3022   1/01

-6A(MA) (0401)                          Page 11 of 16

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials _____

-6A(MA) (0401)                    Page 12 of 15                    Form 3022   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

Initials: _____    Form 3022    1/01

-6A(MA) (0401)    Page 13 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     Steven C. Fustolo *by Marcy Brauzel, Attorney-in-fact* (Seal)
                                    STEVEN C. FUSTOLO                    -Borrower

_____     _____ (Seal)
                                                                     -Borrower

                     (Seal)        _____ (Seal)
_____     -Borrower
                     -Borrower

                     (Seal)        _____ (Seal)
_____     -Borrower
                     -Borrower

                     (Seal)        _____ (Seal)
_____     -Borrower
                     -Borrower

COMMONWEALTH OF MASSACHUSETTS,

*Nbfdt*   County ss:

On this 10TH   day of   JANUARY 2008
personally appeared STEVEN C. FUSTOLO

, before me, the undersigned notary public,

proved to me through satisfactory evidence of identification, which was/were
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose.
My Commission Expires:
(Seal)

Notary Public

Page 15 of 15

VMP®-6A(MA) (0401)

Form 3022   1/01

Initials

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this        10TH        day of  JANUARY 2008        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
          UNION CAPITAL MORTGAGE BUSINESS TRUST
                                                                    (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

          115 SALEM STREET UNIT #13, BOSTON, MA  02113
                          [Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
          115 SALEM STREET CONDOMINIUMS
                  [Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
.    A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and
(iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.
    B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to
Lender and which provides insurance coverage in the amounts (including deductible levels), for the
periods, and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance,

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-8R (0008)          Form 3140 1/01
Page 1 of 3          Initials:
VMP MORTGAGE FORMS - (800)521-7291

then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

Form 3140 1/01

-8R (0008)

Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
STEVEN C. FUSTOLO                                                           -Borrower
                                        -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

-8R (0008)                   Page 3 of 3                  Form 3140 1/01

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 10TH    day of    JANUARY 2008    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to

UNION CAPITAL MORTGAGE BUSINESS TRUST

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:

115 SALEM STREET UNIT #13, BOSTON, MA    02113
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials: _____
Page 1 of 4    Form 3170 1/01

-57R (0008)    VMP MORTGAGE FORMS - (800)521-7291

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Initials: _____

-57 R (0008)                Page 2 of 4                Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _JCH by mo_

Form 3170 1/01

MMP-57 R (0008)

Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)
STEVEN C. FUSTOLO            -Borrower

By Marcy Breutzel
Attorney in fact
_____(Seal)
                            -Borrower

_____(Seal)
                            -Borrower

_____(Seal)
                            -Borrower

_____(Seal)
                            -Borrower

_____(Seal)
                            -Borrower

_____(Seal)
                            -Borrower

_____(Seal)
                            -Borrower

VMP-57 R (0008)                Page 4 of 4                Form 3170 1/01

File Number: ██████

## EXHIBIT "A"

## LEGAL DESCRIPTION

Closing Date:          **1/10/2008**
Borrower(s):           **Steven C. Fustolo**
Property Address:      **115 Salem Street, Unit 13, Boston, MA  02113**

Unit No. 13 of 115 Salem Street Condominium (the "Condominium"), located at 115 Salem Street, Boston, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A, of the General Laws of Massachusetts, by Master Deed dated April 1, 2004 and recorded with Suffolk County Registry of Deeds on April 14, 2004 in Book 34247, Page 253, as amended (hereinafter referred to as "Master Deed").

The Unit is shown on Floor Plans of the Building referenced in and/or recorded with the Master Deed to which are affixed the verified statement of a registered architect, registered professional engineer or registered land surveyor.

The Unit is conveyed together with the undivided percentage interest of 5.27% in the Condominium Common Areas and Facilities as defined and described in the Master Deed and the exclusive right to use those Common Areas and Facilities, the Limited Common Areas and the Exclusive Use Areas appurtenant to the Units as set forth in the Master Deed.

The Unit is subject to and have the benefit of all rights, easements, agreements, interest and provisions contained in the Master Deed and the Condominium Trust and By-Laws recorded therewith, as any of the same may be amended from time to time pursuant to the provisions thereof, as well as the provisions of Chapter 183A of the Massachusetts General Laws as the same may be amended from time to time.

For grantor's title see deed recorded with the Suffolk County Registry of Deeds in Book 42920 Page 260.

# Suffolk County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

---

## <u>Recording Information</u>

| | |
|---|---|
| Document Number | : 89559 |
| Document Type | : AGT |
| Recorded Date | : October 06, 2017 |
| Recorded Time | : 03:06:10 PM |
| | |
| Recorded Book and Page | : 58629 / 115 |
| Number of Pages(including cover sheet) | : 9 |
| Receipt Number | : 681182 |
| Recording Fee | : $75.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**<u>Suffolkdeeds.com</u>**

After Recording Return To:
**CoreLogic SolEx**
**1637 NW 136th Avenue Suite G-100**
**Sunrise, FL 33323**

This Document Prepared By:
Cheryl White
**Nationstar Mortgage LLC d/b/a Mr. Cooper**
**8950 CYPRESS WATERS BLVD**
**DALLAS, TX 75019**

_____ [Space Above This Line For Recording Data] _____

| | |
|---|---|
| Original Recording Date: **January 11, 2008** | Loan No.: ▮ |
| Original Loan Amount: **$283,500.00** | Investor Loan No: ▮ |

Land Mortgage Document Number: **N/A**
Land Instrument Number: **N/A**
Land Book Number: **N/A**
Land Page Number: **N/A**



# FREDDIE MAC FLEX MODIFICATION AGREEMENT

Borrower ("I"):  **STEVEN C. FUSTOLO**. Borrower is the grantor/mortgagor under the first lien mortgage, deed of trust, or security deed referenced below. If more than one Borrower is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  **Nationstar Mortgage LLC d/b/a Mr. Cooper, whose address is 8950 CYPRESS WATERS BLVD, DALLAS, TX 75019** Lender is the beneficiary/mortgagee under the first lien mortgage, deed of trust, or security deed referenced below.

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **January 10, 2008** and recorded in Book/Liber **42960**, Page **158**, Instrument No: **2008 00003112**, recorded on **January 11, 2008**, of the Official Records of **SUFFOLK** County, **MA**.

Property Address ("Property"): **115 SALEM STREET 13, BOSTON, MA 02113**
 Legal Description:
**See Exhibit "A" attached hereto and made a part hereof;**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Freddie Mac Flex Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set





forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:
   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. The property has not been condemned nor have I received notice of condemnation.
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Freddie Mac Flex Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Freddie Mac Flex Modification Program, are true and correct; and
   F. I have made or will make all payments required under a Trial Period Plan or as directed by my Lender until my Loan Documents are permanently modified in accordance with this Agreement.
   G. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.
2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:
   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;
   B. The Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and
   C. **I DO NOT MEET THE ELIGIBILITY REQUIREMENTS FOR A MODIFICATION UNDER THE FEDERAL GOVERNMENT'S HOME AFFORDABLE MODIFICATION PROGRAM AND THEREFORE I WILL NOT RECEIVE ANY INCENTIVE PAYMENTS FOR TIMELY PAYMENTS OF MY MONTHLY PAYMENT.**
3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **October 1, 2017** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **October 1, 2017.**
   A. The Maturity Date will be: **September 1, 2057.**
   B. The modified principal balance of my Note will include all amounts and arrearages that are past due past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new




FREDDIE MAC FLEX MODIFICATION AGREEMENT
8763b 08/14

*(page 2 of 7 pages*

principal balance of my Note will be **$442,891.56** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts will accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. **$74,891.56** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $368,000.00. Interest at the rate of **4.250%** will begin to accrue on the Interest Bearing Principal Balance as of **September 1, 2017** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **October 1, 2017**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.250% | September 01, 2017 | $1,595.72 | $341.49 May adjust periodically | $1,937.21 May adjust periodically | October 01, 2017 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of. (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan

or other agreement that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect



upon notice of such error. If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.


5.  In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).




In Witness Whereof, the Lender and I have executed this Agreement.

Date: 9/25/17

**STEVEN C. FUSTOLO** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

Commonwealth of Massachusetts, __Middlesex__ _____ County ss :

On this __25__ day of __September__ , 20__17__, before me, the undersigned notary public, personally appeared **STEVEN C. FUSTOLO,** (document signer) proved to me through satisfactory evidence of identification, which were

__MA Driver's License__ , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

Official Signature and Seal of Notary

__Neil Quigley__
Official Printed Name and Seal of Notary

**NEIL QUIGLEY**
Notary Public
Commonwealth of Massachusetts
My Commission Expires May 18, 2023

My commission expires : __May 18 2023__

FREDDIE MAC FLEX MODIFICATION AGREEMENT
8763b 08/14

(page 6 of 7 pages)

**Nationstar Mortgage LLC d/b/a Mr. Cooper**

By: _Cheryl White_ _____ (Seal) - Lender
Name: _Cheryl White_
Title: **Assistant Secretary**

_10-2-17_
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX
County of Dallas

Before me _PATRICK ESHIDI ODIMULA_ /Notary Public (name/title of officer) on this day
(Please Print Name)
personally appeared _____CHERYL WHITE_____, the Assistant Secretary of Nationstar
Mortgage LLC d/b/a Mr. Cooper, (known to me)(or proved to me on the oath of _____, or
through _____(description of identity card or other document)) to be the person
whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the
same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___2___ day of _October_ , A.D., _2017_.

_____
Signature of Officer

_PATRICK ESHIDI ODIMULA_
(Printed Name of Officer)

_Notary Public_
Title of Officer

My Commission expires : _12 - 15 - 2019_

PATRICK ESHIDI ODIMULA
Notary Public, State of Texas
My Comm Expires 12-15-2019
Notary ID 13240303

# Exhibit "A"

Loan Number: ▮▮▮▮▮▮

Property Address: **115 SALEM STREET 13, BOSTON, MA 02113**

Legal Description:

THE FOLLOWING DESCRIBED PROPERTY SITUATED IN THE COUNTY OF SUFFOLK, STATE OF
MASSACHUSETTS: UNIT NO.13 OF 115 SALEM STREET CONDOMINIUM (THE CONDOMINIUM),
LOCATED AT 115 SALEM STREET, BOSTON, MASSACHUSETTS, CREATED PURSUANT TO AND
SUBJECT TO THE PROVISIONS OF CHAPTER 183A, OF THE GENERAL LAWS OF
MASSACHUSETTS, BY MASTER DEED DATED APRIL 1, 2004 AND RECORDED WITH SUFFOLK
COUNTY REGISTRY OF DEEDS ON APRIL 14, 2004 IN BOOK 34247, PAGE 253, AS
AMENDED (HEREINAFTER REFERRED TO AS MASTER DEED). THE UNIT IS SHOWN ON FLOOR
PLANS OF THE BUILDING REFERENCED IN AND/OR RECORDED WITH THE MASTER DEED TO
WHICH ARE AFFIXED THE VERIFIED STATEMENT OF REGISTERED ARCHITECT, REGISTERED
PROFESSIONAL ENGINEER OR REGISTERED LAND SURVEYOR. THE UNIT IS CONVEYED
TOGETHER WITH THE UNDIVIDED PERCENTAGE INTEREST OF 5.27 PERCENTAGE IN THE
CONDOMINIUM COMMON AREAS AND FACILITIES AS DEFINED AND DESCRIBED IN THE
MASTER DEED AND THE EXCLUSIVE RIGHT TO USE THOSE COMMON AREAS AND FACILITIES,
THE LIMITED COMMON AREAS AND THE EXCLUSIVE USE AREAS APPURTENANT TO THE UNITS
AS SET FORTH IN THE MASTER DEED. THE UNIT IS SUBJECT TO AND HAVE THE BENEFIT
OF ALL RIGHTS, EASEMENTS, AGREEMENTS, INTEREST AND PROVISIONS CONTAINED IN
THE MASTER DEED AND THE CONDOMINIUM TRUST AND BY-LAWS RECORDED THEREWITH, AS
ANY OF THE SAME MAY BE AMENDED FROM TIME TO TIME PURSUANT TO THE PROVISIONS
THEREOF, AS WELL AS THE PROVISIONS OF CHAPTER 183A OF THE MASSACHUSETTS
GENERAL LAWS AS THE SAME MAY BE AMENDED FROM TIME TO TIME.

### Derivation Clause:

The instrument constituting the source of **STEVEN C. FUSTOLO**'s interest in the
foregoing described Property was a Deed, from **115 SALEM STREET REALTY, LLC**,
Grantor, to **STEVEN C. FUSTOLO**, Grantee, recorded on 12/31/2007 at Book N/A,
Page N/A under Instrument No. 2007 00138945 in the Register's Office of
SUFFOLK County, MA.



2011 00103668
Bk: 48758 Pg: 267    Doc: AST
Page: 1 of 2    12/07/2011 07:48 AM

Attested hereto

*Josephine M. Roache*

Francis M. Roache
Register of Deeds

## CORPORATE ASSIGNMENT OF MORTGAGE

**Suffolk, Massachusetts**
**SELLER'S SERVICING #:** ██████████████

**MERS #:** ████████████████████

Date of Assignment: December 1st, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST at 2929 WALDEN AVENUE, DEPEW, NY 14043
Assignee: HSBC BANK USA, N.A. at 2929 WALDEN AVENUE, DEPEW, NY 14043

Executed By: STEVEN C. FUSTOLO  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST
Date of Mortgage: 01/10/2008 Recorded: 01/11/2008 in Book/Reel/Liber: 42960 Page/Folio: 158 as Instrument No.: 200800003112 In the County of Suffolk, State of Massachusetts.

Property Address: 115 SALEM STREET UNIT #13, BOSTON, MA  02113

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $283,500.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST
On December 1st, 2011

By: _____
MICHAEL PETER, Assistant
Secretary

(SEAL — MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. CORPORATION SEAL 1999 DELAWARE)

*(left margin, rotated)* Property Address: 115 SALEM STREET UNIT #13, BOSTON, MA, 02113

Recording Requested By:
HSBC MORTGAGE CORPORATION (USA)
When Recorded Return To:
DISCHARGE DEPT 1-800-338-4626
HSBC BANK USA NA
2929 WALDEN AVENUE
DEPEW, NY  14043

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF New York
COUNTY OF Erie

On the 1st day of December in the year 2011 before me, the undersigned Notary Public in and for said State, personally appeared MICHAEL PETER, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,



_____

DANIEL HERINGTON
Notary Expires: 09/22/2012  #01HE6193739
Qualified in Erie County

(This area for notarial seal)

2012 00075864

Bk: 49938 Pg: 194    Doc: AST
Page: 1 of 2    08/03/2012 08:17 AM

Attested hereto *Francis M. Roach*

Francis M. Roache
Register of Deeds

*Corrective*

## CORPORATE ASSIGNMENT OF MORTGAGE

**Suffolk, Massachusetts**
**SELLER'S SERVICING #:** █████████

**MERS #:** ███████████████████

Date of Assignment: July 30th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
UNION CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCESSORS AND ASSIGNS at 2929
WALDEN AVENUE, DEPEW, NY 14043
Assignee: HSBC BANK USA, N.A. at 2929 WALDEN AVENUE, DEPEW, NY 14043

Executed By: STEVEN C. FUSTOLO  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCESSORS
AND ASSIGNS
Date of Mortgage: 01/10/2008 Recorded: 01/11/2008 in Book/Reel/Liber: 42960 Page/Folio: 158 as
Instrument No.: 200800003112 In the County of Suffolk, State of Massachusetts.

Property Address: 115 SALEM STREET UNIT #13, BOSTON, MA 02113

Legal: ****** THIS IS A CORRECTIVE ASSIGNMENT TO ADD "IT'S SUCCESSORS AND
ASSIGNS TO THE ASSIGNOR'S NAME ON ASSIGNMENT RECORDED 12/07/11 INSTR # 2011
00103668 BK/PG 48758/267. ******

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $283,500.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor
hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNION
CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCESSORS AND ASSIGNS
On July 30th, 2012

By: _____
MICHAEL PETER, Assistant
Secretary

*(seal: ELECTRONIC REGISTRATION SYSTEMS — CORPORATE SEAL 1999 DELAWARE)*

Recording Requested By:
HSBC BANK USA NA
When Recorded Return To:
DISCHARGE DEPT 1-800-338-4626
HSBC BANK USA NA
2929 WALDEN AVENUE
DEPEW, NY 14043

*(left margin, vertical)* Property Address: 115 SALEM STREET UNIT #13, BOSTON, MA. 02113

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF New York
COUNTY OF Erie

On the 30th day of July in the year 2012 before me, the undersigned Notary Public in and for said State,
personally appeared MICHAEL PETER, Assistant Secretary, personally known to me or proved to me on
the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

WITNESS my hand and official seal,



_____
DANIEL HERINGTON
Notary Expires: 09/22/2012  #01HE6193739
Qualified in Erie County

(This area for notarial seal)

Bk: 57499 Pg: 24



2017 00009593
Bk: 57499 Pg: 24   Page: 1 of 2
Recorded: 01/31/2017 09:16 AM
ATTEST:Stephen J. Murphy, Register
Suffolk County Registry of Deeds

## CORPORATE ASSIGNMENT OF MORTGAGE ███████

**Suffolk, Massachusetts**
**SELLER'S SERVICING #:** ████████████ **Investor's Loan #:** ████████ Old
**Servicing #:** ████████

Date of Assignment: January 3rd, 2017
Assignor: HSBC Bank USA, N.A. at 2929 Walden Avenue, Depew, NY 14043
Assignee: Nationstar Mortgage LLC at 8950 Cypress Waters Blvd., Coppell, TX 75019

Executed By: Steven C. Fustolo To: Mortgage Electronic Registration Systems, Inc. as nominee for Union Capital Mortgage Business Trust
Dated: 01-10-2008 Recorded: 01-11-2008 as Instrument No. 2008 00003112, Book/Reel/Liber 42960, Page/Folio 158 In the County of Suffolk, State of Massachusetts.

Property Address: 115 Salem St Unit #13, Boston, MA 02113

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $283,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

HSBC Bank USA, N.A.
On January 3rd, 2017

By: _____
Kraig Jones, Vice President and Assistant Secretary

\*1 ████████████████████████████████████

Recording Requested By:
Mission Global LLC
When Recorded Return To:
 Recording Dept.
Mission Global LLC
1120 S. Capital of Texas Hwy
Bldg 3 Suite 150
Austin, TX 78746

*Left margin (rotated):* Property Address: 115 Salem St Unit #13, Boston, MA 02113

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Texas
COUNTY OF TRAVIS

On January 3rd, 2017, before me, Allison Paige Smith, a Notary Public in and for TRAVIS in the State of
Texas, personally appeared Kraig Jones, Vice President and Assistant Secretary, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Allison Paige Smith*
Allison Paige Smith
Notary Expires: 3/27/2017  #129365890

ALLISON PAIGE SMITH
Notary Public, State of Texas
My Commission Expires
March 27, 2017

(This area for notarial seal)

# Suffolk County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 104057 |
| Document Type | : AST |
| Recorded Date | : December 03, 2018 |
| Recorded Time | : 08:51:17 AM |
| | |
| Recorded Book and Page | : 60478 / 265 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 740636 |
| Recording Fee | : $75.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents do convey, grant, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to **SELECT PORTFOLIO SERVICING, INC., A UTAH CORPORATION, WHOSE ADDRESS IS 3217 S DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119-3284, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date **01/10/2008,** made and executed by **STEVEN C. FUSTOLO,** mortgagor(s), to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCESSORS AND ASSIGNS,** mortgagee, and was recorded in the Office of the Register of Titles and County Recorder for **SUFFOLK** County, **Massachusetts,** in **Book 42960, Page 158 and Instrument # 2008 00003112.**

Modification: Modification 10/06/2017 BK: 58629 PG: 115 INSTR: 89559.

Property is commonly known as: 115 SALEM STREET 14, BOSTON, MA 02113.

**IN WITNESS WHEREOF,** this Assignment is executed by its Vice President of Loan Documentation **this 30th day of November in the year 2018.**
**NATIONSTAR MORTGAGE LLC**

**HOLLY HARDY**
**VICE PRESIDENT LOAN DOCUMENTATION**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**Loan#** ▮▮▮▮▮▮▮

STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 30th day of November in the year 2018, by Holly Hardy as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**ASHLEY MORRELL**
**COMM EXPIRES: 04/29/2022**

**ASHLEY MORRELL**
Notary Public - State of Florida
Commission # GG 212021
My Comm. Expires Apr 29, 2022
Bonded through National Notary Assn.

☐ No Mortgage Broker was involved in the placing of this loan.
  Mortgage Broker's  Name:
  Address:
  License:

☐ No Mortgage Loan Originator was involved in the placing of this loan.
  Mortgage Loan Originator's  Name:
  Address:
  License:

**Instrument Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

# Suffolk County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 95199 |
| Document Type | : AST |
| Recorded Date | : August 25, 2021 |
| Recorded Time | : 10:53:02 AM |
| | |
| Recorded Book and Page | : 66153 / 201 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 921221 |
| Recording Fee | : $105.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

Total Pages: 2

115 SALEM STREET UNIT #13, BOSTON, MA, 02113

**CORPORATE ASSIGNMENT OF MORTGAGE**

TS Ref #:
MA/SUFFOLK

Assignment Prepared on: August 12, 2021

**Assignor: SELECT PORTFOLIO SERVICING, INC., A UTAH CORPORATION**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**Assignee: FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2019-2**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 1/10/2008, in the amount of $283,500.00, executed by STEVEN C. FUSTOLO to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/11/2008, Instrument #: 2008 00003112, Book / Liber / Reel: 42960, Page / Image / Folio: 158 in SUFFOLK County, State of Massachusetts.

Property Address: 115 SALEM STREET UNIT #13, BOSTON, MA, 02113

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Recording Requested By:**
Richmond Monroe Group

**When Recorded Return To:**
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

Page: 2 of 2 / TS Ref #: ▓▓▓▓▓▓▓▓▓

SELECT PORTFOLIO SERVICING, INC., A UTAH CORPORATION

On: AUG 1 9 2021

By:

Name: Rylie Naylor
        Document Control Officer

Title:

State of UTAH
County of SALT LAKE

On _____ AUG 1 9 2021 _____, before me, _____ Lorena Medina _____, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared _____ Rylie Naylor _____, _Document Control Officer_ _____. SELECT PORTFOLIO SERVICING, INC , A UTAH CORPORATION, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Lorena Medina

Notary Expires: _____ MAY 2 6 2025 _____ / #: _____

718488

LORENA MEDINA
Notary Public  State of Utah
My Commission Expires on:
May 26, 2025
Comm. Number: 718488

MA/SUFFOLK